Joseph P. Kuszynski, J.
The City of Buffalo has petitioned Special Term for a preliminary order of condemnation, pursuant to article 21 of the City of Buffalo Charter and article 15 of the General Municipal Law permitting it to acquire a five-acre site at Nos. 249-273 West Genesee Street in Buffalo, New York, owned by the Iroquois Gas Corporation. The city alleges this property is needed for its water front urban renewal program and that it intends to build a school and a community facility complex on the northerly portion of the parcel and *26 residential housing on the southerly portion. The defendant Iroquois resists the application upon the ground that since it is itself a public utility, the property is and has been devoted to public use and welfare since November, 1848. The defendant also maintains: ‘‘ That no successor replacement use or purpose ordained by the water front redevelopment project for this site can equal the public good performed and the critical necessity supplied by Iroquois Gras Corporation from this vital and essential site.”
Iroquois defends its site from condemnation also on the basis of inconsistency in the city’s allocation of priorities of space in the 292-acre water front redevelopment area. It alleges that the city has permitted to remain intact a nursing home, a gasoline service station, an electric utility corporation (Niagara Mohawk Power Corporation), privately rented apartments, a church and an auditorium. In addition, a banking complex is now under construction while a private motel and a community college are under contemplation.
Iroquois further asserts that the development officials have not offered it a suitable replacement site in the water front area or elsewhere in the downtown district. Although the present site contains 200,000 square feet, apparently a 100,000 square-foot site would suffice for the defendant’s needs.
Some aspects of Iroquois’ operations presently conducted at this site, which is its downtown service location, are city-wide and could well be transferred to other locations. In the main, however, the services rendered by it from the subject premises are essential in view of the critical need for speedy access by its personnel to the sophisticated gas-fired equipment used in the downtown area. This is so because of the highly volatile nature of gas.
This court recognizes, of course, that under ordinary circumstances, it should not interfere in the progress of urban renewal programs by substituting its judgment for that of the taking agency. Still, in the instant case, the demands of public safety are so persuasive that it becomes necessary to insist that the over-all planning prerogatives of an urban development agency give way to the need to provide facilities in the redevelopment area for Iroquois so that critically essential services are assured for the protection and safety of the public in the downtown area.
When one condemning authority seeks to appropriate land already held by another, the court, of necessity, must resolve the question of competing priorities. (Matter of Board of Educ. *27 v. Pace Coll., 27 A D 2d 87, 90.) An illustration of that function appears in Matter of City of Rochester v. Rochester Gas & Elec. Corp. (54 Misc 2d 855). There, the parcel in question, located in an urban renewal project and owned by a public utility, was used by the utility as a parking lot for company vehicles and as Justice Dye noted (p. 857): “ The condemnation of the lands in question will interfere to some extent with the even tenor of the utility’s daily life and will, no doubt, be an inconvenience, but it will not be destructive of its ability to discharge its legal obligation to the public.”
Unlike the situation found to exist in that case by Justice Dye, Iroquois has shown an immediate and critical need for a site in the downtown area so that emergency services will be readily available to its customers located nearby and it has shown also that no other sites are presently available for that purpose. Relocation of its emergency services facilities to a suburban location would not be an adequate substitute. It appears also that the continued presence of the Iroquois operation within the renewal area would not cause any substantial additional difficulties in the preparation and development of the project.
It is therefore the considered opinion of this court that in view of the emergency nature of services provided by Iroquois at this facility, the priority of its present use outranks that contemplated in the urban development plans.
This court could not avoid the impression that at no time during the long period of appropriation (12 years) was any real effort made to resolve this conflict. Inescapable also is the conclusion that the city has adopted a “ closed door ” policy as to Iroquois, especially since it has no alternative or substitute site available. Inasmuch as an electric power plant has been permitted to remain in the water front development exempt from condemnation, it does appear that there is a contradiction in the city planning which is unfair and discriminatory as applied to Iroquois. Displacement of Iroquois from this area does hold the potential of endangering the safety of thousands of citizens who are concentrated in the downtown district if the natural gas users in that area are deprived of the emergency services rendered from the nearby service site.
While 98% of the 292-acre water front redevelopment area has been acquired and 75% of this acquired area has been committed in various degrees to specific purposes, only 16% of this area has been put to actual use.
As it is, somewhere in the water front renewal area, a small area, irrespective of the actual relocation of the present gas *28 company functions, is necessary for gas testing purposes. The dilemma of Iroquois is real as to where to relocate since most areas nearby, in the Ellicott District, Oak-Elm section and Boswell Park section, are also in varying stages of redevelopment. Surely, somewhere in these redevelopment areas a suitable site can be- found by the developers to relocate the Iroquois Gas Corporation's service center so vital to the downtown area.
This court is continuing its jurisdiction and is reserving its decision further in this matter until July 24, 1972 because it is necessary not to deprive Iroquois of an emergency facility near the downtown area even for one day. The court believes that if both parties will approach the problem in a true spirit of co-operation, a suitable site can be found from which Iroquois can service the downtown area. Therefore, it is hoped that on the adjourned date of July 24, 1972, a fair solution to this problem will be submitted.